UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| STANLEY REED, *and as Representative of a Class of similarly situated individuals*, ) ) ) ) Plaintiffs, ) ) v. ) ) HOUSING AUTHORITY ) OF SOUTH BEND, ) ) Defendant. ) | Case No.: 3:16-cv-253-JVB-CAN |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED AND SUPPLEMENTAL COMPLAINTS**

In April 2016, the Housing Authority of South Bend issued Plaintiff, Stanley Reed, a lease termination notice after he fought and stabbed his visitor at the Housing Authority. This violent, criminal altercation gave the Housing Authority good cause to terminate Reed's lease under the United States Housing Act and applicable regulations. Nevertheless, Reed challenges that notice through this lawsuit. Reed also alleges the Housing Authority incorrectly charges him $25 a month in rent, even though that amount is well within the USHA's $50 limit and Reed never complained about his rent until filing this lawsuit.

Reed asserts due process, equal protection, USHA, and breach of contract claims on behalf of himself and a putative class. In addition, Reed, individually, asserts failure-to-accommodate claims because the Housing Authority allegedly did not remove his visitor from his apartment before the two fought.

All of Reed's claim fail. His allegations do not give fair notice of what his claims are and the grounds upon which they rest. Moreover, he pleads himself out of court by establishing the Housing Authority *complied* with the USHA and applicable regulations. Reed's claims fail

for other reasons in addition to this underlying substantive deficiency.   For example, his procedural due process claims lack merit because Indiana's immediate possession procedure and his lease's grievance procedure provide him constitutionally sufficient process.  Reed's equal protection claim fails because he does not allege discriminatory intent.  Reed's USHA claim fails because the policy section he appears to cite does not provide him with a private right of action.  Reed cannot sustain his contractual claims because he does not identify the contract at issue; he is not an intended third party beneficiary of the Housing Authority's Annual Contributions Contract ("ACC"); and some of his contract claims are preempted.  Finally, Reed's failure-to-accommodate claims lack merit because he does not allege he requested an accommodation or that he needed an accommodation because of his alleged disability.

Accordingly, the Housing Authority respectfully requests the Court grant its Motion and dismiss Reed's claims with prejudice.

## REED'S ALLEGATIONS[1]

Reed currently resides in a public housing development owned by the Housing Authority, which was established under Indiana law and funded by the U.S. Department of Housing and Urban Development ("HUD"), Indiana and South Bend.[2]  (Am. Compl. ¶¶ 1, 7, 10; Supp. Compl. ¶¶ 1, 6, 9.)

Reed sought (but has not received) "disability benefits" from the Social Security Administration, but he "has only sporadic income, derived principally from selling blood." (Am. Compl. ¶ 7; Supp. Compl. ¶ 6.)  Therefore, Reed pays the Housing Authority's minimum

---

[1] The allegations in Reed's Amended and Supplemental Complaints (referred to together as "Complaint" in this Brief) are taken as true only for purposes of this Motion to Dismiss.

[2] The Complaint alleges the Housing Authority experienced "administrative and fiscal problems," but Reed does not rely on those allegations to support his claims.  (Am. Compl. ¶¶ 20-28; Supp. Compl. ¶¶ 19-27.)

rent of $25.00 a month.  (Am. Compl. ¶ 12; Supp. Compl. ¶ 11; Reed's Current Lease, Ex. 1. )[3] Reed claims "[h]e is unable to determine how [the Housing Authority] set his rent at the current amount and if, given his lack of income and benefits, he does owe rent to [the Housing Authority] under statutes and rules governing HUD-funded public housing authorities."  (Am. Compl. ¶ 12; Supp. Compl. ¶ 11.)   In addition, Reed claims "[the Housing Authority] sets rent for tenants with no income, pursuant to [Housing Authority] policies, which do not accurately measure the ability of those tenants to pay the rent amount established."  (*Id*.)

Reed claims the Housing Authority's failure to accurately determine his rent constitutes a violation of 42 U.S.C. §1983 and the Fourteenth Amendment's due process and equal protection clauses, the Indiana Constitution's due course of law provision, the USHA, and an unidentified contract between the Housing Authority and HUD. (Am. Compl. ¶¶ 20-24; Supp. Compl. ¶¶ 19-23.)   Reed brings these claims individually and as representative of a putative class of "all past, current and future [Housing Authority] tenants … in need of accurate determination of the amount of rent charged by [the Housing Authority] … but who did not or will not receive accurate determination of the amount of rent charged."  (Am. Compl. ¶ 17(J); Supp. Compl. ¶ 16(J).)

In addition to his rent-calculation claims, Reed asserts claims based on the lease termination notice the Housing Authority sent him on April 22, 2016. Ex. 2.[4]  Reed's  lease prohibits him, "any member of [his] household, a guest, or another person under [his] control"

---

[3] The terms of Reed's lease, including his rent and basis for terminating his lease, are central to this lawsuit and set forth in Reed's lease.  Therefore, the Housing Authority may attach Reed's lease to this Brief without converting this 12(b)(6) motion into one for summary judgment.  *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend, No*. 3:11 CV 163 PPS, 2012 WL 1877740, at *1 (N.D. Ind. May 18, 2012); *McCready v. EBay, Inc*., 453 F.3d 882, 891-92 (7th Cir. 2006); *Venture Assoc. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993).

[4] Because the Notice is central to Reed's Complaint and is referred to throughout, the Court may consider the Notice as part of pleadings without converting this Motion to Dismiss into a motion for summary judgment. *See Kehoe*, 2012 WL 1877740, at *1; *McCready*, 453 F.3d at 891-92; *Venture Assoc. Corp.,* 987 F.2d at 431.

from "engaging in … any activity that threatens the health, safety, or right of peaceful enjoyment of [the Housing Authority's] public housing premises by other residents of Employees of [the Housing Authority]."  (Ex. 1, Section 8O, Section 13C; Ex. 2, p. 1.)   In fact, the Housing Authority has a "One Strike" or "Zero Tolerance" policy for any such violent criminal activity, and it serves as "good cause" to terminate Reed's lease.  (Ex. 1 Section 13C; Ex. 2, p. 2.)

   The Housing Authority issued the April 22 notice because it determined Reed's bloody knife fight with his visitor provided good cause to terminate his lease.  (Ex. 2, pp. 1-3). Specifically, Reed was "involved in an altercation with an individual that resulted in physical bodily harm.  During the altercation the individual had been stabbed and taken in an ambulance to the hospital.  The South Bend Police Department was called and [Reed was] taken away by the officers."  (Ex. 2, p. 1.)  The Housing Authority had to hire a contractor to clean up the bloody mess left by the altercation.  (*Id.*)  Reed's lease termination notice explained that he could he could "contest the termination of [his] lease … during the eviction procedure used by the Housing Authority because HUD has determined that the judicial eviction procedure in Indiana provides the opportunity for a hearing in court that contains the basic elements of due process."  (Ex. 2, pp. 2-3.)

   Reed's Complaint acknowledges the violent altercation between him and his visitor. (Am. Compl. ¶¶ 13, 25-28; Supp. Compl. ¶¶ 24-27.)  However, Reed alleges the altercation derived from his visitor's "unprovoked physical attack," which resulted in Reed "suffering physical injuries" and "requiring dental services."  (Am. Compl. ¶¶ 13.)  Reed, individually, claims the Housing Authority violated the Fair Housing Act ("FHA"), Title II of the Americans with Disabilities Act ("ADA"), the Rehabilitation Act and the unidentified HUD contract. Specifically, Reed claims the Housing Authority failed to accommodate his alleged disability

4

when it did not "respond to [his] request that [the Housing Authority] remove the visitor from [his] apartment and to summon the South Bend police for assistance," and "blam[ing]" him for the fight by sending him the lease termination notice. (Am. Compl. ¶¶ 20-28; Supp. Compl. ¶¶ 19-27.) Reed's alleged disabilities include "arthritis and mental limitations which leave him medically frail," and result in "significant limitations to major life activities" such as "impaired mobility and his impaired ability to think, reason, and use good judgment in evaluation alternatives." (Am. Compl. ¶ 8; Supp. Compl. ¶ 7.)

In addition, Reed, individually and on behalf of a putative class, claims the Housing Authority's lease termination notice and anticipated immediate possession action violates the Fourteenth Amendment's due process and equal protection clauses, Indiana's due course of law provision, the USHA, and the unidentified HUD contract. (Am. Compl. ¶¶ 20-24; Supp. Compl. ¶¶ 19-23.) Reed brings these putative class claims on behalf of "all past, current and future [Housing Authority] tenants … who suffer or are likely to suffer injuries as a result of the actions or inactions of [the Housing Authority], including the injury of being sued in the Small Claims Division. (Am. Compl. ¶17(J); Supp. Compl. ¶ 16(J).)

## ARGUMENT

### I. Pleading Standards

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to seek dismissal of a complaint that fails to state a claim upon which relief can be granted. When deciding a motion to dismiss under Rule 12(b)(6), the Court must accept as true any well-pleaded factual allegations, but conclusory allegations are not entitled to this presumption of truth. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011). After disregarding conclusory allegations, the Court must determine whether the remaining factual allegations clear two hurdles. *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "First, the complaint must

5

describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (quotation marks and ellipses omitted). "Second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Id.* (quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Jones v. South Bend Housing Authority*, 2009 WL 1657466 (N.D. Ind. 2009). Plausibility does not require "detailed factual allegations," but the plaintiff must plead factual allegations that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. But, "[i]f the allegations give rise to an obvious alternative explanation, then the complaint may stop [] short of the line between possibility and plausibility of entitlement to relief." *McCauley*, 671 F.3d at 616. The Court should draw on its judicial experiences and common sense to determine whether a complaint states a plausible claim. *Iqbal*, 556 U.S. at 679.

Reed's claims do not clear either the notice hurdle or the plausibility hurdle – in fact, his allegations affirmatively defeat most of his claims.

**II.    Reed's Section 1983 Due Process and Indiana Due Course of Law Claims Fail**

Reed's Section 1983 due process and due course of law claims fail because he does not provide sufficient detail to give the Housing Authority fair notice of what his claim are and the grounds upon which they rest. Reed does not specify whether his due process claim is substantive or procedural in nature. Indeed, Reed does not allege how the Housing Authority's rent determination or lease termination notice implicated his due process was violated at all, instead concluding that "[The Housing Authority] deprived Reed and the Class of due process…." (Am. Compl. ¶ 20; Supp. Compl. ¶ 19.) Reed's lack of specificity dooms these

claims. *A.B. ex rel. Kehoe v. Hous. Auth. of S. Bend*, No. 3:11 CV 163 PPS, 2011 WL 4005987 (N.D. Ind. September 8, 2011); *Kehoe*, 2012 WL 1877740, at *11.

### A. Reed's Potential Procedural Due Process Claim Fails

Moreover, Reed cannot plausibly state either a procedural or substantive due process claim based on his rent calculation or lease termination notice. A procedural due process claim requires a plaintiff establish the deprivation of a constitutionally protected liberty or property interest without constitutionally adequate process. *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 693-94 (7th Cir. 2013); *Khan v. Bland*, 630 F.3d 519, 535 (7th Cir. 2010).

#### 1. *His Rent-Based Claims Fail*

Reed's possible rent-based procedural due process claim fails because the Housing Authority's rent calculation did not deprive him of a constitutionally protected liberty interest. To the contrary, the Housing Authority set Reed's rent well within the minimum rent required by the USHA for tenants with no income. The USHA provides income-based or flat rent options to public housing tenants. 42 U.S.C. 1437a(a). Regardless of the rent method selected, public housing tenants must pay at least the minimum rent established by the public housing authority, unless tenants are exempted from the minimum rent requirement because of financial hardship. 42 U.S.C. 1437a(a)(3);[5] 24 C.F.R. § 5.630. Housing authorities are permitted to "establish a minimum rent of up to $50." 42 U.S.C. 1437a(a)(3); 24 C.F.R. § 5.630(a)(2).

Here, Reed's allegations establish his rent was $25 a month, well within the allowable minimum of up to $50. Moreover, Reed has not (and cannot) allege he sought and was

---

[5] Section 3 of the USHA (42 U.S.C. § 1437a) has recently been amended by the Housing Opportunity Through Modernization Act of 2016, which became law on July 29, 2016. Pub. L. No. 114-201, § 102, 130 Stat. 782, 786-92 (2016). The Act does not substantively change 42 U.S.C. § 1437a(a)(3). Moreover, the law as it relates to Section 1437a is not currently effective, as the effective date requires notice or regulations from HUD. 130 Stat. at 791.

7

unlawfully denied a financial hardship exemption to the required minimum rent. In other words, the Housing Authority's rent calculation deprived Reed of nothing.

Even if the Housing Authority's minimum rent calculation exceeded the USHA's limit (which it did not do), Reed's lease provided him with constitutionally adequate process to challenge the Housing Authority's rent calculation. (Ex. 1, ¶ 14.) Indeed, the lease (in compliance with federal regulations) provides Reed the opportunity to file a grievance. (Ex. 1, ¶ 14). The grievance procedure provides constitutionally adequate process by affording Reed informal settlement opportunities and a formal hearing process during which Reed may be represented, present evidence, and cross-examine witnesses. 24 C.F.R. § 966.50-57; *Imes v. Philadelphia Hous. Auth.,* 928 F. Supp. 526, 531 (E.D. Pa. 1996) (no violation of due process where the plaintiff could resolve disputes through the housing authority's grievance system). Reed has not (and cannot) allege he notified the Housing Authority of his rent concerns, let alone that he attempted (and was denied the opportunity) to avail himself of the lease's grievance process. Therefore, his rent calculation procedural due process claim fails.

### 2. *His Lease Termination Notice Claims Fail*

Any procedural due process claim based on his lease termination notice fares no better. As with the rent calculation, the lease termination notice has not deprived Reed of anything and this claim is not ripe. *See Herring v. Chicago Housing Authority*, 850 F.Supp. 694, 697-98 (N.D. Ill. 1994) (noting that a notice to terminate does not actually terminate a tenancy). Without the deprivation of a constitutionally protected liberty or property interest, Reed's eviction-based procedural due process claim fails as a matter of law.

Even if Reed suffered a deprivation of a liberty or property interest (which he has not), Reed has (or will) receive constitutionally adequate process. The notice provided 30 days before Reed's lease was terminated. (Ex. 2.) Therefore, the lease termination notice comported

with the USHA and HUD regulations.  24 C.F.R. § 966.4(l)(3); *Kehoe*, 2011 WL 4005987, at *8.  Moreover, Reed's Complaint acknowledges the Housing Authority cannot evict him unless it files an immediate possession action in St. Joseph Superior Court, Small Claims Division.  (Am. Compl. ¶¶ 14-15; Supp. Compl. ¶¶ 13-14.)  Reed suggest such an action provides inadequate process, alleging immediate process hearings are scheduled "as soon as ten days after filing or service on the defendant tenants" and the court allots "five minutes or less" for such hearing.  (Am. Compl. ¶¶ 14-15; Supp. Compl. ¶¶ 13-14.)   However, courts have repeatedly held Indiana's eviction process and similar procedures in other states afford constitutionally sufficient due process.  *Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 135-36 (2002); *Kehoe*, 2012 WL 1877740 at *11; *Bishop v. Hous. Auth. of S. Bend*, 920 N.E.2d 772, 782 (Ind. Ct. App. 2010); *Guardarrama v. U.S. Dep't of Hous. and Urban Dev.*, 74 F.Supp.2d 127, 135-36 (D. P.R. 1999).  Therefore, Reed's apparent procedural due process claim based on Indiana's immediate possession procedure fails as a matter of law.

     **B.  Reed's Potential Substantive Due Process Claims Fail**

To the extent Reed attempts to assert a substantive due process claim, he does not provide sufficient notice to sustain such a claim.  Moreover, Reed fails to plausibly allege such a claim.  There is no fundamental right to public housing.  *Kehoe*, 2011 WL 4005987, at *8 (*citing Hassan v. Wright,* 45 F.3d 1063, 1069 (7th Cir.1995) and *Grant v. City of Chicago,* 594 F.Supp. 1441, 1450–51 (D.C. Ill.1984)).  Therefore, any substantive due process claim fails unless the Housing Authority's actions were arbitrary or irrational.  *Id.*

Reed's allegations establish the Housing Authority's actions comported with the law and were therefore not arbitrary or irrational.  For example, when setting Reed's rent at $25 a month, the Housing Authority complied with the USHA's rent determination requirements for individuals with no income.  42 USC § 1437a(a)(3)(A); 24 CFR § 5.630.

9

Likewise, Reed's allegations show the Housing Authority had good cause to issue his lease termination notice. *See Stevens v. Hous. Auth. of S. Bend*, 720 F. Supp. 2d 1013, 1030 (N.D. Ind. 2010), *aff'd sub nom. Stevens v. Hous. Auth. of S. Bend, Indiana*, 663 F.3d 300 (7th Cir. 2011) ("Due process requires a determination of good cause to justify terminating a public housing lease."); *Lowery v. Housing Auth. of City of Terre Haute*, 826 N.E.2d 685, 689 (Ind.Ct.App. 2005). According to the USHA and HUD regulations, good cause exists to terminate Reed's lease and evict him if any "covered person" – which includes Reed (the "tenant"), his "guest" or any "other person under [Reed's] control" – engages in "any criminal activity that threatens the health, safety, or right to peaceful enjoyment of the premises by other tenants." 42 U.S.C. § 1437d(1)(6); 24 C.F.R. § 966.4(f)(12)(i) and (ii); 24 C.F.R. § 5.100; Ex. 1, Section 8O, Section 13C. In fact, the Housing Authority has a "One Strike" or "Zero Tolerance" policy for any such violent criminal activity. (Ex. 1, Section 13C; Ex. 2 at p. 2.) "Guest … means a person temporarily staying in the unit with the consent of a tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant." 24 C.F.R. § 5.100; *Stevens,* 663 F.3d at 309. An "other person under the tenant's control" means that "the person, although not staying as a guest … in the unit, is, or was at the time of the activity in question, on the premises … because of an invitation from the tenant or other member of the household who has express or implied authority to so consent on behalf of the tenant." *Id.* And, "'control' means only that the tenant has permitted access to the premises." *Stevens,* 663 F.3d at 309 (*citing Rucker,* 535 U.S. at 131).

The Housing Authority issued the lease termination notice because Reed's fight with his visitor threatened the health, safety, and right to peaceful enjoyment of the premises by other tenants. (Ex. 2.) In fact, Reed stabbed his guest at the Housing Authority, which resulted in his guest being taken to the hospital in an ambulance; Reed suffering physical injuries; the police

10

taking Reed away; and a bloody mess being left in the Housing Authority. (Ex. 2.) Reed admits his violent altercation with his visitor (which underlies the lease termination notice) occurred. (Am. Compl. ¶¶ 13, 20-28; Supp. Compl. ¶¶ 19-27.) However, Reed seems to contend his visitor was the aggressor and started the fight, and he should not be "blamed" for it. (*Id.*) But, it is irrelevant whether Reed or his visitor started the fight because Reed's lease, the USHA and HUD regulations hold him responsible for his or his visitor's criminal conduct since both are "covered persons." Indeed, as Reed alleges, his visitor was in his apartment and therefore either a "guest" or an "other person under [his] control." 24 C.F.R. § 5.100; *Stevens,* 663 F.3d at 309. Moreover, Reed may contend he was an "innocent tenant" and should not be subject to the Housing Authority's "Zero Tolerance" for this sort of criminal activity. But those allegations cannot sustain a substantive due process claim. *See Rucker*, 535 U.S. 125 (upholding a housing authority's "discretion to conduct no fault evictions for drug-related crime"); *Kehoe*, 2011 WL 4005987, at *8 (N.D. Ind. Sept. 8, 2011) (dismissing the plaintiff's substantive due process claim because the housing authority had good cause to evict after a household member violated HASB's zero tolerance policy). In short, Reed's allegations establish his fight with his visitor was criminal activity justifying the termination of his lease. At a minimum, Reed fails to allege sufficient facts to plausibly suggest the Housing Authority misapplied this provision of the lease when issuing his lease termination notice.

### C. Reed Fails To Allege A Basis for "*Monell*" Liability

In addition, all of Reed's Section 1983 claims fail because he does not allege a basis for "*Monell*" liability. To sustain his Section 1983 claim, Reed must establish he was injured and a Housing Authority policy, custom, or practice proximately caused this injury. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). There are three ways Reed can prove a Housing Authority policy or custom caused a violation of his constitutional rights: "(1)

11

an express policy that, when enforced, causes a constitutional deprivation. . . ; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or use with the force of law. . . ; or (3) . . . that [a] constitutional injury was caused by a person with final policymaking authority." *Baxter by Baxter v. Vigo Cnty. Sch. Corp*., 26 F.3d 728, 734-35 (7th Cir. 1994)(internal quotations and citations omitted). Reed must assert specific factual allegations to support his claim that a municipal policy caused his alleged injury; conclusory allegations do not suffice. *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985)(citations omitted); *Boehn v. City of East Chicago, Ind*., 799 F.2d 1180, 1188-89 (7th Cir. 1986)(citations omitted);

Reed does not claim the alleged injury was caused by any HASB policy, custom or practice. Absent such allegations, Reed's Section 1983 claims should be dismissed. *See, e.g., Campbell v. Berwyn*, 815 F. Supp. 1138, 1141-42 (N.D. Ill. 1993) (plaintiffs' Section 1983 equal protection race discrimination claim dismissed where plaintiffs failed to allege that discriminatory acts were the result of a municipal policy, custom, or practice); *Fields v. City of Salem Housing Authority*, Civil No. 14–778, 2015 WL 4171611, *4-5 (D. New Jersey, July 10, 2015) (granting motion to dismiss Section 1983 claim based on rent calculation because the plaintiff failed to allege facts sufficient to show a basis for municipal liability under *Monell*).

For all of these reasons, Reed's possible federal procedural and substantive due process claims fail as a matter of law. Because Indiana due course of law claims are analyzed the same as federal due process claims, Reed's fourth claim also fails for these same reasons. *See Lake Cent. Sch. Corp. v. Scartozzi*, 759 N.E.2d 1185 (Ind. Ct. App. 2001).

### III. Reed's Section 1983 Equal Protection Claim Fails

The Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Reed can establish an

equal protection violation by showing a defendant's actions had a discriminatory effect and the defendant acted with discriminatory intent. *Chavez v. Ill. State Police*, 251 F.3d 612, 635–36 (7th Cir.2001); *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264 (1977). To prove discriminatory effect, a plaintiff must assert that he is a "member[ ] of a protected class, that [he is] otherwise similarly situated to members of the unprotected class, and that [he] was treated differently from members of the unprotected class." *Chavez*, 251 F.3d at 636 (*citing Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir.2000). Evidence of discriminatory intent may include racial remarks or deviations from established practices or procedures. *See Arlington Heights*, 429 U.S. at 267; *Chavez*, 251 F.3d at 646 (7th Cir.2001) (*citing DeWalt v. Carter*, 224 F.3d 607, 612 n. 3 (7th Cir.2000)).

Reed fails to allege either discriminatory effect or intent. For example, although Reed cursorily alleges he is disabled (Supp. Compl. ¶ 7), he does not allege any other class member is disabled.[6] Moreover, Reed does not allege the Housing Authority treated him or any class member differently than similarly situated members of the unprotected class. Indeed, Reed does not claim the Housing Authority calculated his or other class members' rent differently than other tenants without regular income, or the Housing Authority failed to issue lease termination notices to other tenants when they or other "covered person" engaged in conduct that threatened the health, welfare and peaceful enjoyment of other tenants. Not only does Reed fail to allege discriminatory effect, he fails to allege the Housing Authority acted with discriminatory intent. Reed does not allege the Housing Authority made discriminatory statements, varied from normal policy when calculating his rent or issuing the lease termination notice, or did anything

---

[6] Reed's Complaint makes vague references to class-based disabilities, but the allegations identifying the class make no mention of impairments, handicaps, or disabilities. (Am. Compl. ¶ 17F; Supp. Compl. ¶ 16F) ("The class is so numerous that joinder of all members is impracticable, as evidenced by HASB's housing of, and anticipated housing of, numerous tenants with handicaps or disabilities who are otherwise qualified to reside at HASB, for which HASB received funding from HUD to house tenants with no income.")

else to suggest discriminatory animus. To the contrary, as discussed above, Reed's allegations establish the Housing Authority had legitimate reasons for its actions, including setting minimum rent in accordance with the USHA and issuing the lease termination notice because Reed and his visitor violated the Housing Authority's Zero Tolerance policy.

Reed's failure to allege discriminatory effect or intentional discrimination dooms his equal protection claim. *Kehoe*, 498 F. App'x at 623 (affirming dismissal of plaintiff tenant's equal protection claim for failure to adequately allege discriminatory intent); *Smith v. Housing Auth. of South Bend,* 867 F.Supp.2d 1004, 1017 (N.D. Ind. 2012) (same). Moreover, as explained above, Reed's Section 1983 claims fail because he has not alleged any basis for *Monell* liability. Accordingly, Reed's equal protection claim should be dismissed.

### IV.     Reed's USHA Claim Fails

Reed claims the Housing Authority violated the USHA by miscalculating his rent and issuing him the lease termination notice in April (as well as the anticipated eviction proceedings). However, Reed does not cite any substantive provision of the USHA or offer any explanation of the alleged violation.[7] Therefore, Reed's USHA claim should be dismissed because he fails to provide sufficient detail to notify the Housing Authority of the basis of his claim and his apparent reliance on Section 1437 is misplaced. *See Fincher v. S. Bend Hous. Auth.,* 612 F.Supp.2d 1009, 1021-22 (N.D.Ind.2009) (internal cites omitted) ("Section 1437, by itself, is merely a policy statement and does not provide a private right of action").

Moreover, any attempt to assert the USHA through a contract or Section 1983 fails because (as discussed above) the allegations establish the Housing Authority's rent calculation and lease termination notice comply with USHA requirements. 42 USC § 1437a(a)(3)(A); 24

---

[7] Reed cites to 42 U.S.C. 1401, *et seq.*, but Section 1401 is not a valid cite—it is an "omitted" code section. The USHA is at 42 U.S.C. § 1437 *et seq*.

14

CFR § 5.630; 42 U.S.C. § 1437d(l)(6) (related to eviction for criminal activity); *Thomas v. Chicago Housing Authority*, 919 F. Supp. 1159, 1164 (N.D. Ill. 1996) (dismissing USHA rent calculation claim; rent complied with the law); *Williams v. Hernandez*, No. 08 Civ. 3858, 2009 WL 2252103, *3-4 (S.D.N.Y July 28, 2009) (dismissing claim based on the plaintiff's request for a hardship exemption because she failed to allege facts showing the denial was improper). Moreover, any Section 1983 claim cannot survive because Reed fails to allege a basis for *Monell* liability. *Fields*, 2015 WL 4171611, *4-5. Reed's USHA claim therefore fails as a matter of law and should be dismissed.

## V. Reed's Failure to Accommodate Claims Fail

Reed, individually, claims the Housing Authority failed to accommodate him in violation of the ADA, FHA, and Rehabilitation Act, and an unidentified HUD contract.[8] (Am. Compl. ¶¶ 25-28; Supp. Compl. ¶¶ 24-28.) However, a plaintiff must request a reasonable accommodation to sustain a failure-to-accommodate claim. *Jovanovic v. In-Sink-Erator Div. of Emerson Elec. Co.*, 201 F.3d 894, 899 (7th Cir. 2000); *Swift v. Potter*, 2006 WL 2868902 (N.D. Ill. 2006) (recognizing the holding of *Jovanovic* in the context of a Rehabilitation Act claim); *Powers v. Kalamazoo Breakthrough Consumer Hous. Coop.*, 2009 WL 2922309 (W.D. Mich. 2001) ("Before a court can evaluate a plaintiff's prima facie case for the failure to provide an accommodation [under the FHA], the plaintiff must show that a special accommodation was, in fact, requested") (citations omitted). Here, Reed does not allege he ever requested a reasonable accommodation. At best, Reed claims he requested the Housing Authority remove the visitor from his apartment and summon the police, but this is not a request for a reasonable accommodation. Indeed, Reed does not (and cannot) allege any facts suggesting he informed

---

[8] The Housing Authority limits its analysis to a failure-to-accommodate theory because Reed's individual claims (*i.e.*, Counts Six through Nine) appear to be based only on that theory, not an alleged disparate treatment or disparate impact theory.

15

the Housing Authority of his alleged arthritis or "mental limitations," let alone that these alleged impairments required an accommodation or was the reason he needed his visitor removed from his apartment. *Jovanovic*, 201 F.3d at 899 (citing Seventh Circuit precedent wherein the plaintiff had "failed to present anything at all regarding whether she informed [the defendant] of her alleged ... disability and her need for accommodation, let alone what should have or could have been done for her."); *see also Beck v. University of Wis. Bd. of Regents*, 75 F.3d 1130, 1134 (7th Cir.1996).

Even if Reed's alleged request that HASB remove his visitor and summon the police constituted a request for accommodation (which it does not), there is no causal connection between Reed's arthritis and mental limitations and his request. The ADA, FHA, and Rehabilitation Act *only* require reasonable accommodations when there is a causal connection between the disability and the plaintiff's ineligibility for housing or some benefit. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 746-52 (7th Cir. 2006). In other words, accommodations are only required when the accommodation or modification is *necessary* to ensure the disabled person has equal access to housing or a benefit of a program. *Id.* Put yet another way, the question is "whether the rule in question, if left unmodified, hurts "handicapped people *by reason of their handicap*, rather than … by virtue of what they have in common with other people …" *Id.* at 749 (quoting *Hemisphere Bldg. Co. v. Will. Of Richton Park*, 171 F.3d 437, 440 (7th Cir. 1999) (emphasis in original)).

Here, Reed suggests the Housing Authority should have accommodated him by removing his visitor from his apartment after the visitor allegedly attacked him and summoning police. This request has no causal connection to Reed's arthritis or his mental limitation. Anyone under physical attack would make the same request, not just individuals with arthritis or mental limitations. *See Kehoe*, 2012 WL 1877740, at *9 (dismissing failure to accommodate

16

claim because there was no causal connection between the tenant's alleged disability and her misconduct); *see also Pernice v. City of Chicago*, 237 F.3d 783, 786-87 (7th Cir. 2001) (finding no nexus between the plaintiff's alleged disability of addition and his misconduct of drug possession). Reed's failure to accommodate claims therefore fails as a matter of law and should be dismissed.

### VI. Reed's Breach of Contract Claims Fail

Reed asserts two breach of contract claims—one on behalf of himself and a putative class (Fifth Count) and one as an individual claim (Ninth Count). Both claims fail. First, Reed's individual breach of contract claim (Ninth Count) is a mere reiteration of his disability discrimination claims. That is, he attempts to apply federal discrimination statutes through a contract, but such claims are preempted by federal law. *See Patton v. Univ. of Chicago Hosps.*, 706 F. Supp. 627, 629 (N.D. Ill. 1989) (holding plaintiff's contract claim was preempted by federal law prohibiting age discrimination, and therefore violation of the policy would not warrant an award of contract damages).

Second, both breach of contract claims (Fifth and Ninth Counts) fail because Reed fails to allege sufficient details to provide the Housing Authority with notice of this claim. Reed does not identify the contract allegedly breached with any specificity, claiming instead that it is a contract between the Housing Authority and HUD in the Housing Authority's possession. These allegations, however, are insufficient to state a third party beneficiary claim. *See Fincher v. South Bend Heritage Foundation*, 606 F.3d 331, 336 (7th Cir. 2010) (noting that for a housing authority resident to state a third party beneficiary claim, he or she must point to "specific regulations (or contract provisions) that are being violated. . . .")

Third, Reed's contractual claims fail because he is not the intended beneficiary of the ACC, which is presumably the contract at issue. In *Holbrook v. Pitt*, 643 F.2d 1261 (7th Cir.

17

1981), the Seventh Circuit held that "a third party may have enforceable rights under a contract if the contract was made for the third party's direct benefit. … If the agreement was not intended to benefit the third party, however, he is viewed as an 'incidental' beneficiary, having no legally cognizable rights under the contract." 643 F.2d at 1270. Therefore, in assessing whether Reed has a viable third party beneficiary claim, the Court will (1) look at the terms of the agreement and (2) determine whether Reed or the putative class is a direct or incidental beneficiary of the contract.

To the extent Reed relies on the ACC (*i.e.*, HASB's primary agreement with HUD) to support this claim, the ACC expressly disclaims any right of third parties (like Reed) to enforce the contract. Specifically, Section 21 of the ACC provides: "Except as to bondholders, as stated in Part B (Attachment VI of this ACC), nothing in this ACC shall be construed as creating any right of any third party to enforce any provisions of the ACC or to assert any claim against HUD or the Housing Authority." (Ex. 3.)[9] Because Reed is not a viable third party beneficiary to the ACC, he does not have standing to bring a claim to enforce that agreement. *Aristil v. Hous. Auth. of City of Tampa, Fla.*, 54 F. Supp. 2d 1289, 1296 (M.D. Fla. 1999) (granting motion to dismiss third party beneficiary claim because of the ACC's disclaimer; plaintiff therefore had no standing because he was not an intended beneficiary of the ACC).

Finally, even if all of the above flaws are ignored, Reed has not (and cannot) allege the Housing Authority breached the ACC or any other contract. As explained above, the Housing Authority sets minimum rent in compliance with the USHA and properly issued Reed a lease

---

[9] To the extent Reed's breach of contract claims rely on the ACC, the Housing Authority attaches the ACC as central to two of Reed's claims. *See Kehoe,* 2012 WL 1877740, at *1; *McCready*, 453 F.3d at 891–82; *Venture Assoc. Corp.*, 987 F.2d at 431; *Kehoe*, 2012 WL 1877740, at *1.

termination notice. Therefore, Reed's Fifth and Ninth Count fail as a matter of law and should be dismissed.

## CONCLUSION

For the foregoing reasons, the Housing Authority requests that all Reed's claims be dismissed in their entirety.

BARNES & THORNBURG LLP

*/s/ Michael P. Palmer*
Michael P. Palmer
Kyra E. Clark
700 1st Source Bank Center
100 N. Michigan St.
South Bend, IN  46601-1632
Michael.Palmer@btlaw.com
Kyra.Clark@btlaw.com
Attorney Palmer: (574) 237-1135
Attorney Clark: (574) 237-1249

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2016 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following: L. Kent Hull, 105 E. Jefferson Blvd., Suite 800, South Bend, IN  46601.

                      Barnes & Thornburg LLP

                      *By:*    */s/  Michael P. Palmer*